# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORMA DUCHITANGA, individually and as next friend for M.D.D., a minor, BLANCA ORTIZ, individually and as next friend for O.S.O. and E.S.O., minors; DIEGO GARCIA AGUILAR, individually and as next friend for Y.G.R. and F.G.R., minors; THALIA ESCAREGA RUBIO, individually and as next friend for F.E.R., a minor; CLEDIA HERNANDEZ MEZA, individually and as next friend for B.L.M., a minor, on their own behalf and on behalf of others similarly situated, | No. 18 Civ. 10332 (PAC) (JW) |

Plaintiffs/Petitioners,

v.

ANDREA CHAPMAN,[1] Acting Director, Office of Refugee Resettlement; ELSY VALDEZ,[2] Federal Field Specialist, Office of Refugee Resettlement; LATISSE BENN, Federal Field Specialist, Office of Refugee Resettlement; XAVIER BECERRA,[3] Secretary, U.S. Department of Health and Human Services; DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Defendants/Respondents.

## [~~PROPOSED~~] ORDER AND FINAL JUDGMENT

This matter is before the Court on the plaintiffs' motion for final approval of their class

action settlement (the "Motion").

---

[1] Acting Director Andrea Chapman is automatically substituted in place of former Director Scott Lloyd pursuant to Fed. R. Civ. P. 25(d).
[2] Defendant Elsy Valdez is no longer employed by the Office of Refugee Resettlement and is hereby dismissed from this action.
[3] Secretary Xavier Becerra is automatically substituted in place of former Secretary Alex Azar II pursuant to Fed. R. Civ. P. 25(d).

The Court, having granted the plaintiffs' motion for preliminary approval on May 4, 2022 ("Preliminary Approval Order") (ECF 112); and having held a fairness hearing on July 28, 2022, to determine whether the proposed Settlement Agreement is fair, reasonable, and adequate; and having considered the plaintiffs' submissions and arguments, including the Motion, the evidence of record, and applicable authority, orders as follows:

**IT IS ORDERED AND ADJUDGED** that the notice plan as set forth in the plaintiffs' motion for preliminary approval—and as carried out by the parties subsequent to this Court's order preliminarily approving the Settlement Agreement—was reasonably calculated, under the circumstances, to apprise the settlement class of the pendency of this litigation and terms of the Settlement Agreement, and the rights of class members to object to any party of the Settlement Agreement and to appear (either on their own or through counsel hired at their own expense) at the final approval hearing on July 28, 2022; and

**IT IS FURTHER ORDERED AND ADJUDGED** that the notice provided fully satisfied the requirements of the U.S. Constitution (including the Due Process Clause), Federal Rule of Civil Procedure 23, and any other applicable law; and

**IT IS FURTHER ORDERED AND ADJUDGED** that the Motion is GRANTED; and

**IT IS FURTHER ORDERED AND ADJUDGED** that this Court hereby approves the Settlement Agreement as fair, reasonable, and adequate in light of all the relevant considerations; and

**IT IS FURTHER ORDERED AND ADJUDGED** that the Court certifies the following class for settlement purposes, "all Unaccompanied Children who are or will be in ORR custody whose release is contingent on fingerprint-based background checks," because the class satisfies Federal Rule of Civil Procedure 23 and for the same reasons the Court conditionally certified the

same class in its Preliminary Approval Order.  The Court also appoints the plaintiffs' counsel as class counsel for the settlement class and appoints the named plaintiffs as class representatives for the settlement class; and

**IT IS FURTHER ORDERED AND ADJUDGED** that the instant action is dismissed with prejudice pursuant to the terms of the Settlement Agreement (ECF 110-1); and

**FINALLY,** attached to this Order and Judgment is a copy of the parties' executed Settlement Agreement, which this Court hereby **SO ORDERS**.

So constitutes the opinion of this Court.

**SO ORDERED:**

_____   7/28/2022
Paul A. Crotty, U.S.D.J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORMA DUCHITANGA, individually and as next friend for M.D.D., a minor, BLANCA ORTIZ, individually and as next friend for O.S.O. and E.S.O., minors; DIEGO GARCIA AGUILAR, individually and as next friend for Y.G.R. and F.G.R., minors; THALIA ESCAREGA RUBIO, individually and as next friend for F.E.R., a minor; CLEDIA HERNANDEZ MEZA, individually and as next friend for B.L.M., a minor, on their own behalf and on behalf of others similarly situated, | No. 18 Civ. 10332 (PAC) (JW) |
| Plaintiffs/Petitioners, | **STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL** |
| v. | |
| CINDY HUANG,[1] Director, Office of Refugee Resettlement; ELSY VALDEZ,[2] Federal Field Specialist, Office of Refugee Resettlement; LATISSE BENN, Federal Field Specialist, Office of Refugee Resettlement; XAVIER BECERRA,[3] Secretary, U.S. Department of Health and Human Services; DEPARTMENT OF HEALTH AND HUMAN SERVICES, | |
| Defendants/Respondents. | |

This Stipulation of Settlement ("Stipulation") is entered into pursuant to Rule 23(e) of the

Federal Rules of Civil Procedure by and between plaintiffs Norma Duchitanga, individually and

as next friend for M.D.D., a minor; Blanca Ortiz, individually and as next friend for O.S.O. and

E.S.O., minors; Diego Garcia Aguilar, individually and as next friend for Y.G.R. and F.G.R.,

minors; Thalia Escarega Rubio, individually and as next friend for F.E.R., a minor; and Cledia

---

[1] Director Cindy Huang is automatically substituted in place of former Director Scott Lloyd pursuant to Fed. R. Civ. P. 25(d).
[2] Defendant Elsy Valdez is no longer employed by the Office of Refugee Resettlement and is hereby dismissed from this action.
[3] Secretary Xavier Becerra is automatically substituted in place of former Secretary Alex Azar II pursuant to Fed. R. Civ. P. 25(d).

Hernandez Meza, individually and as next friend for B.L.M., a minor (together, "Named

Plaintiffs"), on behalf of themselves and of a proposed class to be certified for settlement

purposes only, and defendants Cindy Huang, Director, Office of Refugee Resettlement ("ORR");

Latisse Benn, Federal Field Specialist, ORR; Xavier Becerra, in his official capacity as Secretary

of the U.S. Department of Health and Human Services; and the United States Department of

Health and Human Services ("HHS") (collectively, "Defendants," and together with Named

Plaintiffs and Class Members, the "Parties");

WHEREAS, Named Plaintiffs filed this action on November 6, 2018, on behalf of

themselves and a putative class, asserting claims under the William Wilberforce Trafficking

Victims Protection Reauthorization Act of 2008 ("TVPRA"), the Due Process Clause, and the

Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, challenging delays allegedly caused by a

June 2018 ORR policy regarding the fingerprinting requirements for potential sponsors of

Unaccompanied Children ("UCs"), as well as sponsors' household members (the "June 2018

Policy");

WHEREAS, on November 6, 2018, Named Plaintiffs filed a motion for class

certification;

WHEREAS, Named Plaintiffs' motion for class certification is stayed pending the

resolution of settlement discussions;

WHEREAS, by Operational Directives issued in December 2018 and March 2019, ORR

rescinded significant portions of the June 2018 Policy;

WHEREAS, on May 15, 2019, Defendants filed a motion to dismiss Named Plaintiffs'

class action complaint;

WHEREAS, Defendants' motion to dismiss remains pending before the Court;

WHEREAS, the Parties desire to settle this matter without the need for further litigation; and

WHEREAS, the Parties have agreed to the entry of this Stipulation without any admission of liability and without a trial;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the Parties to this action and their counsel, as follows:

1.    **Definitions.**

    a.   **UC** means an Unaccompanied Child, as used and defined in the Homeland Security Act of 2002 (referred to as an "unaccompanied alien child" therein), which created the Unaccompanied Children's program at ORR.  A UC is a child who has no lawful immigration status in the United States; has not attained 18 years of age; and with respect to whom there is: (1) no parent or legal guardian in the United States; or (2) no parent or legal guardian in the United States available to provide care and physical custody.

    b.   **UC Sponsor** means an individual or entity to which ORR releases an unaccompanied child out of Federal custody.

    c.   **Household Member** means any non-UC Sponsor adult in the UC Sponsor's household.

    d.   **Family Reunification Packet** means an application and supporting documentation completed by a potential UC Sponsor who wishes to have a UC released from ORR to his or her care which is used by ORR, among other documentation and procedures, to determine the sponsor's ability to provide for the UC's physical and mental well-being.

e.  **HHS processing systems** includes all offices, operating divisions, programs, centers, and contractors used for processing fingerprints, including but not limited to HHS's Program Support Center.

f.  **Confidential** means sensitive information designated by Defendants in their sole discretion as confidential pursuant to Paragraph 5 below.

g.  **Circumstances Beyond ORR's Control for Fingerprinting Appointment Times** shall mean any of the following conditions:

   i.  the unexpected closure or disruption of a fingerprinting site outside of the ordinary course of business, such as that caused by inclement weather, technological failures, health pandemics or other states of emergency, or other acts of god, in which case the Circumstances Beyond ORR's Control for Fingerprinting Appointment Times extend only to the site or sites experiencing the unexpected closure or disruption. An unexpected disruption of a fingerprinting site outside of the ordinary course of business does *not* include: the implementation of social distancing or related precautions to address health concerns, when those precautions do not result in closure; or the transition of some portion of site personnel to remote working, when such transition does not result in closure of the site;

   ii.  a more than 30% increase in fingerprinting referrals nationwide above the national previous six-month average number of referrals per month, or, at any site, a more than 30% increase in fingerprinting referrals above that site's previous six-month average number of

referrals per month.  Under this subsection, the Circumstances Beyond
ORR's Control for Fingerprinting Appointment Times extend to all
sites nationwide if (a) the more than 30% increase in referrals is a
nationwide increase above the national previous six-month average; or
(b) the more than 30% increase occurs at at least two sites, each of
which processed, over the last six months, a mean number of
fingerprints per month of at least 35.  Otherwise, the Circumstances
Beyond ORR's Control for Fingerprinting Appointment Times under
this subsection extend only to the site or sites that meet the threshold
increase; and/or

iii.    a more than 50% increase in the number of fingerprinting referrals at
any two sites nationwide compared with each site's highest monthly
number of referrals in the previous year, in which case the
Circumstances Beyond ORR's Control for Fingerprinting
Appointment Times extend to all fingerprinting sites nationwide,
except when the triggering site or sites' previous year's high-end
number of referrals was less than 35 fingerprints per month, in which
case the Circumstances Beyond ORR's Control for Fingerprinting
Appointment Times extend only to the affected site or sites.

h.  **Circumstances Beyond HHS's Control for Fingerprint Processing Times**
shall mean any of the following conditions:

i.    the unexpected closure or disruption of HHS processing systems
outside of the ordinary course of business, such as that caused by

inclement weather, technological failures, health pandemics or other states of emergency, or other acts of god. An unexpected closure or disruption of HHS processing systems outside the ordinary course of business does *not* include: the implementation of social distancing or related precautions to address health concerns, when those precautions do not result in closure; or the transition of some portion of HHS processing systems personnel to remote working, when such transition does not result in closure of HHS processing systems;

ii. a more than 30% increase in the average number of digital prints processed by HHS per month for ORR's UC sponsorship program above the previous six month average, or if the total number of digital prints processed by HHS for that program exceeds 4,000 in any given month; and/or

iii. a more than 30% increase in the average number of paper prints processed by HHS per month for ORR's UC sponsorship program above the previous six month average, or the processing by HHS of more than 1,000 paper prints for that program in any given month.

i. **Exception Period** means the period during which ORR shall not be required to offer fingerprinting appointments or process fingerprints within the time specified in 3.a.1, 4.a, or 4.b, below.

j. **Processing** or **process** means transmitting fingerprints for fingerprint-based background check(s) and concludes when the results of such background check(s) are received by ORR.

k.  **Effective Date** means the date of entry of the Final Order Approving Class Action Settlement.

2.  **Class Certification and Settlement Approval.**

a.  The Parties stipulate, for the purposes of settlement only, to certification of a class, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2), consisting of all UC who are or will be in ORR custody whose release is contingent on fingerprint-based background checks ("Class Members").

b.  Should, for whatever reason, the Stipulation not become final and effective, the class certification shall immediately be set aside and the stipulated settlement class shall immediately be decertified.  The fact that the Parties are willing to stipulate to class certification as part of the Stipulation shall have no bearing on, and shall not be admissible in or considered in connection with, the issue of whether a class should be certified in a non-settlement context in this action or any other lawsuit.  Defendants expressly reserve their right to oppose class certification should this Stipulation not become final and effective.

c.  The Parties agree that counsel for the Named Plaintiffs, i.e., the New York Civil Liberties Union Foundation, the American Civil Liberties Union Foundation Immigrants' Rights Project, the National Center for Youth Law, and the law firm Morrison & Foerster ("Plaintiffs' Counsel"), shall be appointed class counsel pursuant to Federal Rule of Civil Procedure 23(g).

d.  The Parties agree that the Named Plaintiffs shall be the representatives of the Class.

7

    e.   Within seven (7) days of the date this Stipulation is executed, Named Plaintiffs shall submit to the Court a motion for preliminary approval of this class action settlement and certification of the proposed class, and the proposed Approval Order attached as **Exhibit A.**

**3.    Fingerprinting Appointment Times.**

    **a.  Offering Fingerprinting Appointment Times to UC Sponsors.**

        i.    ORR will offer potential UC Sponsors and their Household Member(s) a digital fingerprinting appointment to occur within seven (7) business days of receipt of the complete Family Reunification Packet and Authorization of Release of Information Form, unless Circumstances Beyond ORR's Control for Fingerprinting Appointment Times prevent an appointment from being offered within that timeframe.

        ii.    ORR will ensure that the required release forms are transferred to the fingerprinting site in advance of the date of such a fingerprinting appointment, as long as ORR has received a potential UC Sponsor or Household Member's signed Authorization of Release of Information form and valid identification at least three (3) business days in advance of his or her appointment.

        iii.    It remains the responsibility of the potential UC Sponsor or Household Member to timely respond to ORR's offer of a digital fingerprinting appointment.

iv.   A potential UC Sponsor or Household Member may waive ORR's offer to attend a digital fingerprinting appointment within 7 days and instead accept an appointment scheduled to occur at a later date.

**b.  Exceptions.**

i.   **Exceptions for Circumstances Beyond ORR's Control for Fingerprinting Appointment Times.**  The Exception Period in the event of the unexpected closure or disruption of a fingerprinting site outside of the ordinary course of business ends when the closure or disruption ends and the site reopens. The Exception Period in the event of increases in the number of fingerprinting referrals ends when monthly reports show a decrease in the number of referrals to below threshold numbers. These threshold numbers will be recalculated monthly based on updated monthly data.

ii.   **Notification of Invocation of Exception**. In the event Circumstances Beyond ORR's Control for Fingerprinting Appointment Times prevent ORR from offering appointments within the seven-day timeframe, ORR will notify Plaintiffs that it is invoking the exception as follows: (1) ORR will notify Plaintiffs within three business days if it invokes an exception pursuant to section 1.g.i.; (2) ORR will notify Plaintiffs within three business days of preparing its internal monthly fingerprinting report, and identify the individual fingerprinting site or sites for which this exception has been invoked, if it involves an individual site exception pursuant to sections 1.g.ii. or 1.g.iii.; and (3)

ORR will notify Plaintiffs within three business days of preparing its internal monthly fingerprinting report if it invokes a nationwide exception pursuant to section 1.g.ii or 1.g.iii.

    iii.    **Mitigation of Delays.** In the event that either (1) a Circumstances Beyond ORR's Control for Fingerprinting Appointment Times exception is triggered, or (2) ORR has knowledge of an impending event that it anticipates may increase referrals, ORR will undertake reasonable steps to mitigate any resulting delays and increase capacity for taking fingerprints by opening additional digital sites and/or hiring additional staff, but only if budgetary resources exist and are allocable for that purpose.

  c.  **Notification of Fingerprinting Appointment Times.** ORR will add a provision to its Authorization of Release of Information form notifying potential UC Sponsors that, at the time of scheduling, ORR will offer an appointment to occur within 7 business days, unless Circumstances Beyond ORR's Control for Fingerprinting Appointment Times prevent an appointment from being offered within that timeframe.

**4.**    **Fingerprint Processing Times.**

  a.  **Digital Prints.** HHS will make reasonable efforts to process digital fingerprints within ten (10) business days of a potential UC Sponsor or Household Member's digital fingerprinting appointment, unless Circumstances Beyond HHS's Control for Fingerprint Processing Times prevent HHS from processing the digital prints within that timeframe.

i.  To meet the ten-business-day timeframe, a potential UC Sponsor or Household Member must have completed, and ORR must have received, all required paperwork, including an Authorization of Release of Information Form, and valid identification at least three (3) business days in advance of his or her fingerprinting appointment.

b.  **Paper Fingerprint Cards.** HHS will make reasonable efforts to process paper fingerprint cards within ten (10) business days from the date prints are received by HHS processing systems, unless Circumstances Beyond HHS's Control for Fingerprint Processing Times prevent HHS from processing the paper fingerprint cards within that timeframe.

i.  To meet the ten-business-day timeframe, the fingerprint card must have legible prints, and a potential UC Sponsor or Household Member must have submitted all supporting information with the fingerprint card, including an Authorization of Release of Information form and valid identification.

c.  **Exceptions.**

i.  **Length of Exceptions for Circumstances Beyond HHS's Control for Fingerprint Processing Times.** The Exception Period in the event of unexpected closure or disruption of HHS processing systems outside of the ordinary course of business ends when the closure or disruption ends and HHS processing systems reopen.  The Exception Period in the event of increases in the mean number of fingerprints processed per month ends when monthly reports show a decrease in

the number of fingerprints processed to below threshold numbers.
These threshold numbers will be recalculated monthly based on
updated monthly figures.

    ii.    **Notification of Invocation of Exception**. In the event Circumstances
Beyond HHS's Control for Fingerprint Processing Times prevent HHS
from processing fingerprints within the ten-business-day timeframe,
HHS will notify Plaintiffs that it is invoking the exception as
follows:(1) HHS will notify Plaintiffs within three business days if it
invokes an exception pursuant to section 1.h.i; (2) HHS will notify
Plaintiffs within three business days of preparing its internal monthly
fingerprinting reports if it is invoking an exception pursuant to section
1.h.ii or 1.h.iii.

    iii.    **Mitigation of Delays.** In the event that either (1) the Circumstances
Beyond HHS's Control for Fingerprint Processing Times exception is
triggered, or (2) HHS has knowledge of an impending event that it
anticipates may increase referrals, HHS will undertake reasonable
steps to mitigate any resulting delays and increase capacity for
processing fingerprints by opening additional digital sites and/or hiring
additional staff, but only if budgetary resources exist and are allocable
for that purpose.

d.  **Notification of Fingerprint Processing Times.**  ORR will add a provision to
its Authorization of Release of Information form notifying potential UC
Sponsors that HHS will process fingerprints within ten (10) business days of

either the digital fingerprinting appointment or the date paper fingerprints are received by HHS processing systems, as applicable, unless Circumstances Beyond HHS's Control for Fingerprint Processing Times prevent fingerprints from being processed within that timeframe.

5. **Monitoring Report and Auditing.**

    a. **Tracking and Reporting of Fingerprinting Times.** Within 6 months of the Effective Date, ORR will, as part of its ordinary operations, begin tracking fingerprint processing and appointment scheduling times in a monthly report, with breakdowns of this information by category of UC Sponsor/Household Member and method of fingerprinting, including the following:

        i. the time it takes for a potential UC Sponsor or Household Member to secure and complete a fingerprint appointment from the time the potential sponsor has returned a completed Family Reunification Packet and Authorization of Release of Information Form;

        ii. the date of the fingerprint appointment; and

        iii. the length of time between the fingerprint appointment and the date results are received by ORR.

    b. Within 6 months of the Effective Date, ORR will (i) provide to Plaintiffs' counsel, on a Confidential basis, monthly fingerprint tracking reports regarding the time it takes each potential UC Sponsor or Household Member to be offered a digital fingerprinting appointment after the receipt of a complete Family Reunification Packet and Authorization of Release of Information Form, the time it takes each potential UC Sponsor or Household

Member to complete a digital fingerprinting appointment, and the length of

time between the appointment and the date results are received by ORR, and

(ii) add monitoring of fingerprint processing times to ORR's monthly internal

auditing reports and provide redacted copies of that report to Plaintiffs'

counsel on a Confidential basis.

c.   Within 6 months of the Effective Date, if ORR implements mitigation efforts

pursuant to sections 3.b.iii and 4.c.iii, ORR will include in its Confidential

monthly report to Plaintiffs' counsel a notification that it has implemented

mitigation efforts and a description of any such efforts.

d.   From the Confidential reporting in subparagraph b above, Plaintiffs' counsel

may prepare quarterly aggregate and anonymized statistics for public release

concerning the total fingerprints processed, the mean appointment wait time,

the mean fingerprint processing time, the total number of cases where ORR

did not offer an appointment to occur within seven (7) business days of receipt

of a completed Family Reunification Packet, and the total number of cases

where HHS did not process a person's fingerprints within ten (10) business

days of a digital fingerprinting appointment.  Prior to any release, Plaintiffs'

counsel must provide the proposed report to ORR for review, following which

ORR will either (i) confirm the accuracy of the statistics for release, or (ii)

calculate what ORR believes to be the correct statistics for release. If the

parties disagree regarding the accuracy of the statistics for release, they will

make all reasonable efforts to resolve any discrepancy. If they cannot come to

a resolution, the Plaintiffs may only release the Plaintiffs' proposed statistics

14

if they also note that the parties dispute the accuracy of Plaintiffs' statistics and release ORR's statement regarding discrepancies alongside the statistics.

e.   **Non-disclosure of Confidential information.** Confidential information provided under this Stipulation may only be shared with and among the Defendants, Defendants' Counsel, Plaintiffs' Counsel who have appeared in this action, and the Plaintiffs' Class Representatives, but only to the extent sharing information with the Plaintiffs' Class Representatives is necessary to evaluate compliance with the terms of this Stipulation. Except insofar as the Confidential information shared is used to generate public reports as set forth in Paragraph 5.c above, information shared under this Stipulation as Confidential may not be shared with the general public.  Plaintiffs and their Counsel agree that they shall not disclose the Confidential information shared under this Stipulation to any person other than those identified herein, and shall safeguard the Confidential information from unauthorized disclosure.

6.   **Default and Cure Period.**  In the event that Plaintiffs believe Defendants are in default of any term of this Stipulation, Plaintiffs shall give Defendants notice of the default and thirty (30) days to cure the default ("Notice of Default").  If Defendants cure the alleged default within 30 days of receipt of the Notice of Default, the parties agree that no breach of the Stipulation will have occurred, and no cause of action for breach of agreement will lie.

7.   **Dismissal with Prejudice and Release of Claims.**  As of the Effective Date, and in consideration for the covenants and undertakings of Defendants set forth in this Stipulation, Plaintiffs, collectively and individually:

    a.  voluntarily dismiss the amended class action complaint in this action with prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(ii); and

    b.  forever waive, and release Defendants, and hold them harmless from, any claim that existed prior to the Effective Date of this Stipulation, and that was or could have been alleged in the Action based on the same common nucleus of operative facts alleged and the arguments made by Plaintiffs in the Action, except for a breach of this Stipulation or any claims relating to the legal adequacy of the measures HHS has agreed to in this Stipulation.

8.    **Non-Admission.**  By entering into this Stipulation, Defendants do not in any way confess liability or concede that Plaintiffs can prove any set of facts that would provide a lawful basis for the relief Plaintiffs seek by their complaint or that, under any set of facts, they would be entitled to the relief they seek.

9.    **Termination.** This Stipulation, including but not limited to the provisions in paragraphs 3 through 6 above, will terminate after 2 years.

10.    **Dispute Resolution by the HHS Departmental Appeals Board ("DAB").**

    a.  **DAB Procedure.**

        i.  **Designation of Neutral.**  The Chair of the Departmental Appeals Board (DAB) for HHS will designate a member of the DAB to serve as an independent HHS Neutral, who may hear disputes between the parties related to the performance of the Stipulation. The designation of the HHS Neutral ends when this Stipulation terminates.  The HHS Neutral shall have no obligation or authority to adjudicate disputes under this Stipulation after this Stipulation terminates.

16

ii.     **Meet-and-Confer.**  Prior to requesting adjudication before the HHS
Neutral, the parties must meet and confer in good faith to resolve the
dispute.

iii.    **Request for Adjudication.**  A party may request adjudication before
the HHS Neutral by submitting a written request to the DAB,
Appellate Division, using the DAB E-file system, available at
https://dab.efile.hhs.gov/.  Before initiating a request, the requesting
party must first comply with the requirements of Paragraphs 6 and
10.a.ii. of this Agreement and certify in the initial filing that such
compliance occurred.

iv.     **Adjudication Process.**  The HHS Neutral has the authority and
discretion to structure the process for adjudicating the dispute, using
relevant provisions of the DAB's current appeals board procedures set
forth at 42 C.F.R. Part 498, Subparts A and E, as a guide.  The HHS
Neutral may use an informal, accelerated process for non-material
breaches, or when justice requires an adjudication within 72 hours.

v.      **Adjudication Results.**  If the HHS Neutral adjudicates the dispute in
favor of Plaintiffs, HHS will accept the adjudication as binding.  If the
HHS Neutral adjudicates the dispute in favor of HHS, Plaintiffs shall
either accept the adjudication as binding or seek any available judicial
relief or relief provided in the Stipulation.

vi.     **Decision inadmissible.**  The decision of the HHS Neutral regarding
any dispute between the parties is inadmissible in court for the purpose

17

of determining whether any party has engaged in a breach of the

Stipulation.  The fact that the HHS Neutral made a decision is

admissible for the limited purpose of demonstrating that the parties

have exhausted the dispute resolution process described herein.

    vii.    **Other relief.**  A complaining party that does not request DAB

adjudication may pursue other available judicial relief.

    **b.  Rule 60(b) Motion.**

        i.    A party claiming a material breach of the settlement may move to

reopen the case pursuant to Fed. R. Civ. P. 60(b)(6).

        ii.    If the moving party first pursues adjudication by the DAB, the non-

filing party will not oppose the motion to reopen.  Non-opposition to

the motion does not waive any defenses on the merits to the alleged

breach.

        iii.    The ability of a Party to seek reopening of this action under this

provision will terminate on the Termination Date described in

paragraph 9 above.

11.    **Reservation of Rights.**  ORR reserves the right to amend any portion of ORR's

fingerprinting policies at any time, unless such changes trigger a violation of the appointment or

processing times under this Stipulation. The parties further agree that such policy decisions are

outside of the scope of the settlement, and nothing in this Stipulation is intended to limit ORR's

ability to engage in the deliberative process.

12.    **No Retention of Jurisdiction.**  As of the Effective Date, the jurisdiction of this

Court shall terminate for all purposes, except that the Parties retain the right to file a motion

pursuant to Fed. R. Civ. P. 60(b)(6) in the event of a breach of this Stipulation, as set forth in

paragraph 10.b above.

    13.    **Fees and Costs**. Each Party shall bear their own fees and costs related to this

litigation and the dispute resolution and reopening procedures set forth in this Stipulation.

    14.    **Binding Agreement.**  This Stipulation shall be of no force and effect unless and

until it is granted final approval by the Court.  The Parties aver that the counsel signing this

Stipulation on their behalf have the full authority to enter into this Stipulation and to sign it on

their behalf.  Upon entry by the Court, this Stipulation is final and binding upon the Parties, their

successors, and their assigns. This Stipulation may be signed in counterparts, each of which

constitutes an original and all of which constitute one and the same Stipulation.  Facsimiles

and/or PDFs of signatures shall have the same force and effect as original signatures and

constitute acceptable, binding signatures for purposes of the Stipulation.

Dated: New York, New York
          April 7, 2022


_____/s/Robert Hodgson_____
ROBERT HODGSON
CHRISTOPHER DUNN
ANTONY GEMMELL
AMY BELSHER
New York Civil Liberties
   Foundation
125 Broad Street, 19th Floor
New York, NY 10004
Tel: (212) 607-3300
rhodgson@nyclu.org

STEPHEN B. KANG
American Civil Liberties Union Foundation
Immigrants' Rights Project
39 Drumm St.
San Francisco, CA 94111
(415) 343-0783

MING CHEUNG
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, N.Y. 10004
(212) 549-2618

LEECIA WELCH
NEHA DESAI
MELISSA ADAMSON
National Center for Youth Law
1212 Broadway, Suite 600
Oakland, CA 94612
(510) 899-6577

PAIGE AUSTIN
Make the Road New York
301 Grove Street
Brooklyn, NY 11237
(718) 418-7690

MICHAEL D. BIRNBAUM
JENNIFER K. BROWN

Dated: New York, New York
          April 7, 2022

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
*Attorney for Defendants/Respondents*

By: _____
     JEFFREY S. OESTERICHER
     ANTHONY J. SUN
     Assistant United States Attorneys
     86 Chambers St., 3rd Floor
     New York, New York  10007
     (212) 637-2695/2810
     jeffrey.oestericher@usdoj.gov
     anthony.sun@usdoj.gov

LAUREN M. GAMBIER
Morrison & Foerster LLP
250 West 55th Street
New York, N.Y. 10019
(212) 336-4233

*Counsel for Petitioners-Plaintiffs*

SO ORDERED:

_____

HONORABLE PAUL A. CROTTY
UNITED STATES DISTRICT JUDGE

Dated: New York, New York
        _____, 2022
              July 28

21